IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN ASSURANCE COMPANY | | § |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. |
| | § | |
| | § | |
| | § | 4:25-CV-2818 |
| JERMAR ROEMAON WELCH; DOMINION | § | |
| TRANSPORTS & LOGISTICS, LLC; H.E.C. | § | |
| LEASING, LLC; TRAVELERS INDEMNITY | § | |
| COMPANY; D/C INTERMODAL, LLC; | § | |
| EMMANUEL I. LOPEZ; AND DARLYN | § | |
| ENAMORADO | § | |
| Defendants | § | |

**DEFENDANTS TRAVELERS INDEMNITY COMPANY AND D/C INTERMODAL, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO GREAT AMERICAN ASSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (COUNTS I AND III)**

# TABLE OF CONTENTS


| | | |
|---|---|---|
| TABLE OF AUTHORITIES | | 3 |
| PRELIMINARY STATEMENT | | 4 |
| STATEMENT OF GENUINE DISPUTED FACTS | | 5 |
| ARGUMENT | | 7 |
| I. | Great American has not carried its burden because the "Trucking or Business Use" exclusion is ambiguous and must be construed against the insurer. | 7 |
| II. | The term "regularly garaged" is vague, and Welch's conclusory declaration cannot establish the exclusion's factual predicate as a matter of law. | 10 |
| III. | Where Welch had been and where he was going are merits issues in the underlying suit; that extrinsic evidence cannot be considered under(Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022)) . | 11 |
| IV. | Even absent a duty to defend, the duty to indemnify is not ripe for adjudication. | 14 |

## TABLE OF AUTHORITIES

**Cases**

(Allstate Cnty. Mut. Ins. Co. v. Wootton, 494 S.W.3d 825 (Tex. App. 2016))

(Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995))

(Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679 (5th Cir. 2000))

(Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997))

(Ford v. Mckesson, 171 F.4th 332 (5th Cir. 2026))

(Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734 (Tex. 1990))

(Guzman v. Allstate Assurance Co., 18 F.4th 157 (5th Cir. 2021))

(Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022))

(Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552 (Tex. 1991))

(Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523 (5th Cir. 2004))

(Sentry Select Ins. Co. v. Ruiz, 324 F. Supp. 3d 874 (W.D. Tex. 2018))

(Tetra Techs., Inc. v. Cont'l Ins. Co., 814 F.3d 733 (5th Cir. 2016))

**Statutes and Rules**

(Fed. R. Civ. P. 56)

**Other Authorities**

Great American's Motion for Summary Judgment (ECF No. 30)

## PRELIMINARY STATEMENT

Great American asks this Court to declare, as a matter of law, that it owes no defense or indemnity to anyone in a pending personal-injury suit. It builds that request on a single, one-sentence statement from its own insured — an interested driver — about where he was parking his truck when the accident happened. That is not a proper basis for summary judgment. The motion fails for three independent reasons.

First, the "Trucking or Business Use" exclusion Great American invokes is ambiguous. Texas law requires an insurer that wishes to exclude coverage to say so in clear and unambiguous language, and it construes any exclusionary language that is susceptible to more than one reasonable reading strictly against the insurer and in favor of coverage. The Fifth Circuit has already held that a nearly identical "in the business of" exclusion in a non-trucking policy is "vague and subject to more than one reasonable interpretation." Great American cannot carry its burden of proving that the exclusion plainly bars every claim.

Second, the exclusion's factual trigger is not established. Subsection 13(f)(2) applies only to travel to a location where the truck is "regularly garaged" — a term the policy defines only circularly, as "parked or stored on a regular basis." The sole evidence that 8735 Howton Street was any such place is Welch's conclusory declaration that "I regularly park the truck between dispatches." That interested, uncorroborated, and unparticularized assertion cannot establish the point as a matter of law, and the Court may not weigh Welch's credibility on summary judgment.

Third, and most fundamentally, the very facts Great American asks the Court to find — where Welch had been and where he was going — are the merits issues in the underlying suit, which pleads that Welch was acting in the course and scope of his employment with Intermodal and others. Under (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex.

2022)) , extrinsic evidence that overlaps with the merits of liability cannot be used to decide the duty to defend. Great American concedes as much: it declined to move on its other coverage counts precisely because they "would require extrinsic evidence ... potentially overlapping with the merits of liability in the underlying lawsuit." The same overlap defeats this motion. And because the duty to indemnify turns on facts still to be developed in the underlying case, that question is not ripe. The motion should be denied.

## STATEMENT OF GENUINE DISPUTED FACTS

**The parties and the policies.** This is a coverage dispute arising from a May 22, 2024 motor-vehicle accident in Houston involving a tractor truck, without a load at the time, driven by Jermar Roemon Welch. (ECF #30 at 7) Great American issued Welch a Non-Trucking Liability policy on the truck commonly known as bobtail coverage; Travelers Indemnity Company is the motor-carrier liability insurer of D/C Intermodal, LLC, and is defending Intermodal in the underlying suit. (ECF #30 at 7) Great American's motion seeks a declaration that it owes no duty to defend and no duty to indemnify Welch, Dominion Transports & Logistics, LLC, H.E.C. Leasing, LLC, or Intermodal. (ECF #30 at 6)

**The underlying suit.** Emmanuel I. Lopez and Darlyn Enamorado sued Welch, Dominion, H.E.C., and Intermodal in state court, alleging that Welch "failed to back up safely causing a collision" while "in the scope of his employment with" Dominion, Export, Intermodal, "and/or Cajun," and asserting vicarious liability against those entities for Welch's conduct in the "course and scope of his employment." (ECF #30 at 17; ECF #30 at 18) As Great American acknowledges, the underlying pleading "contains no allegations at all about where Welch had been or where he was going at the time of the accident." (ECF #30 at 18)

**The exclusion.** Great American relies on the policy's "Trucking or Business Use" exclusion, which it asserts bars coverage for injury "arising out of any accident which occurs while the covered auto is being used in the business of any lessee." (ECF #30 at 14) As relevant here, the policy defines "in the business of any lessee" to include use "while traveling to or from any location for the purpose of picking up, delivering or transporting cargo on behalf of any lessee" (subsection 13(d)) and use "while traveling from ... any location at which the covered auto was present for the purpose of picking up, delivering or transporting cargo, to any location where the covered auto is regularly garaged" (subsection 13(f)(2)). (ECF #30 at 15; ECF #30 at 15; ECF #30 at 15) The policy defines "regularly garaged" only as "parked or stored on a regular basis, whether indoors or outdoors." (ECF #30 at 15)

**The disputed circumstances of the accident.** Great American's factual predicate rests entirely on a short declaration by its insured, Welch. According to that declaration, Welch was dispatched to deliver a load, and "after dropping the empty container and chassis at one of the empty yards down by the Port," he was traveling toward 8735 Howton Street — a location where he avers, "I regularly park the truck between dispatches." (ECF #30 at 17) The declaration thus describes at least two separate stops before the accident — the cargo delivery and a later drop of empty equipment at an unspecified yard — and offers no particulars establishing that 8735 Howton Street was the truck's "regular" garaging location: no dates, no frequency, no duration, and no corroboration. (ECF #30 at 17) Welch is a defendant in the underlying suit and an interested witness. These facts — where Welch had been, what he was doing, and where he was going — are genuinely disputed and are not conclusively established on this record.

**Great American's own position on overlap.** Great American moved for summary judgment only on Counts I and III. It expressly declined to move on its remaining coverage

counts because they "would require extrinsic evidence outside of the pleading allegations potentially overlapping with the merits of liability in the underlying lawsuit." (ECF #30 at 6)

## ARGUMENT

### I. GREAT AMERICAN HAS NOT CARRIED ITS BURDEN BECAUSE THE "TRUCKING OR BUSINESS USE" EXCLUSION IS AMBIGUOUS AND MUST BE CONSTRUED AGAINST THE INSURER.

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56) The Court must view the evidence and all reasonable inferences in the light most favorable to the nonmovant, and summary judgment is improper where a reasonable jury "could differ as to the import of the evidence." (Ford v. Mckesson, 171 F.4th 332 (5th Cir. 2026)) Because Great American, as the insurer, bears the burden of proving its coverage defense, its burden on summary judgment is "even higher"; it must "establish beyond peradventure all of the essential elements of the claim or defense." (Guzman v. Allstate Assurance Co., 18 F.4th 157 (5th Cir. 2021)) Great American cannot meet that standard here.

**A. Texas law construes ambiguous exclusions strictly against the insurer and in favor of coverage.** Great American correctly concedes that it "must establish that the plain language of a policy exclusion ... allows the insurer to avoid coverage of all claims." (Mot. 3.) (ECF #30 at 9) Texas law places a demanding gloss on that burden. "An intent to exclude coverage must be expressed in clear and unambiguous language," and because the insurer selects the policy language, it is "incumbent upon it to expressly and clearly state the exclusion." (Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552 (Tex. 1991)) A policy is ambiguous if it is "susceptible to two or more reasonable interpretations," and "[a]mbiguous policy language — in particular, exclusionary language — must be construed

strictly against the insurer and liberally in favor of the insured." (Tetra Techs., Inc. v. Cont'l Ins. Co., 814 F.3d 733 (5th Cir. 2016)) Where the insured's reading of an exclusion is reasonable, "the court must adopt it, even if it is not the most reasonable position." (Tetra Techs., Inc. v. Cont'l Ins. Co., 814 F.3d 733 (5th Cir. 2016)) Indeed, the court must adopt the insured's construction of an exclusionary clause so long as it is not unreasonable, "even if the construction urged by the insurer appears to be more reasonable." (Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552 (Tex. 1991)) And where a policy provision is ambiguous, "that construction which affords coverage will be the one adopted." (Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734 (Tex. 1990))

**B. The Fifth Circuit has already held that a materially identical non-trucking "business use" exclusion is ambiguous.** The precise question here — whether a non-trucking policy's "in the business of" exclusion reaches a truck that is not actively carrying cargo — has been answered against Great American's position. In (Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995)) , the Fifth Circuit, applying Texas law, construed the "in the business of transporting property" exclusion in a non-trucking policy and held it "vague and subject to more than one reasonable interpretation" as applied to a driver who, like Welch, was neither under dispatch nor carrying a load at the time of the accident. (Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995)) Because both the insurer's and the insured's readings were reasonable, the court "resolve[d] the doubt against the drafter and f[ound] that the exclusion does not apply." (Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995)) The same vagueness defeats summary judgment here.

**C. The exclusion does not unambiguously reach Welch's empty return trip.** Great American invokes two subsections, and neither plainly applies to the facts it offers. Subsection

13(d) excludes travel "to or from any location for the purpose of picking up, delivering or transporting cargo." (ECF #30 at 15) By Welch's own account, he had already completed his delivery and then dropped the empty container and chassis before the accident; a reasonable reading is that an empty truck no longer traveling "for the purpose of" any cargo movement falls outside that language. (ECF #30 at 17) Subsection 13(f)(2) is narrower still: it requires travel "from ... any location at which the covered auto was present for the purpose of ... delivering ... cargo, to any location where the covered auto is regularly garaged." (ECF #30 at 15; ECF #30 at 15) But Welch describes two different locations — the place he delivered the load and a separate "empty yard[]" where he dropped the container and chassis — and the policy does not make clear which, if either, is the operative "location at which the covered auto was present for the purpose of ... delivering ... cargo," or whether dropping empty equipment is a cargo "delivery" at all. (ECF #30 at 17) At a minimum, those competing readings render the exclusion ambiguous as applied, and the ambiguity must be resolved for coverage. (Tetra Techs., Inc. v. Cont'l Ins. Co., 814 F.3d 733 (5th Cir. 2016))

Great American's lead authority, (Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679 (5th Cir. 2000)) , does not compel a different result. (Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679 (5th Cir. 2000)) held a differently worded "Business Use" exclusion unambiguous, but it did so by expressly distinguishing (Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995)) on the exclusion's precise wording — reasoning that the (Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995)) exclusion's requirement that the truck "actually be engaged in transporting property" made "the policy language in that case significantly different." (Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679 (5th Cir. 2000)) That distinction cuts in the

insureds' favor: it confirms that ambiguity turns on the specific exclusionary language, and the language here — keyed to travel "for the purpose of" cargo and to an undefined "regularly garaged" location — is at least as open to competing reasonable readings as the language found vague in (Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995)) . Because Great American has not shown that the exclusion unambiguously bars every claim, it has not carried its burden, and summary judgment must be denied. (Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552 (Tex. 1991))

## II. THE TERM "REGULARLY GARAGED" IS VAGUE, AND WELCH'S CONCLUSORY DECLARATION CANNOT ESTABLISH THE EXCLUSION'S FACTUAL PREDICATE AS A MATTER OF LAW.

Subsection 13(f)(2) applies only if the accident occurred during travel to a location where the truck was "regularly garaged." (ECF #30 at 15) Great American therefore must prove, conclusively, that 8735 Howton Street was such a location. It cannot, for two reasons.

**A. The definition of "regularly garaged" is vague.** The policy defines "regularly garaged" only as "parked or stored on a regular basis, whether indoors or outdoors." (ECF #30 at 15) That definition is circular — it defines "regularly" by reference to a "regular basis" — and it supplies no standard for how often, how recently, or for how long a truck must be parked somewhere before that place becomes its "regular" garage. Where a policy supplies no meaningful definition, the term takes its "plain, ordinary and generally accepted meaning[]." (Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734 (Tex. 1990)) On any ordinary reading, whether a given lot is a driver's "regular" parking place is a fact-intensive question of degree, and a term that is "subject to more than one reasonable interpretation" must be construed against the drafter. (Assicurazioni Generali, S.p.A. v. Ranger Ins. Co., 64 F.3d 979 (5th Cir. 1995)) Great American's own authority underscores the point: it relies on a case finding "regularly garaged"

satisfied only where the driver had parked at the lot "for the three days preceding the accident" and "most of the time" when off duty. (Mot. 19.) (ECF #30 at 25) No such facts appear in this record.

**B. Welch's interested, conclusory declaration cannot establish the point on summary judgment.** The only evidence that 8735 Howton Street was Welch's "regular" garage is his declaration's single clause: "I regularly park the truck between dispatches." (ECF #30 at 17) That statement is a legal conclusion dressed as a fact. Summary-judgment evidence "must be particularized, not vague or conclusory." (Guzman v. Allstate Assurance Co., 18 F.4th 157 (5th Cir. 2021)) Welch supplies no dates, no frequency, no duration, and no corroboration — nothing from which a court could conclude, beyond peradventure, that the lot met the policy's standard. Nor may the Court resolve the point by crediting Welch. He is a defendant in the underlying suit and an interested witness, and "[h]ow much weight to credit self-interested evidence is a question of credibility, which judges may not evaluate at the summary judgment stage." (Guzman v. Allstate Assurance Co., 18 F.4th 157 (5th Cir. 2021)) The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." (Guzman v. Allstate Assurance Co., 18 F.4th 157 (5th Cir. 2021)) A movant that bears the burden of proof cannot obtain judgment on an interested witness's uncorroborated say-so; the "function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (Ford v. Mckesson, 171 F.4th 332 (5th Cir. 2026)) Because whether 8735 Howton Street was the truck's "regular" garaging location is genuinely disputed and not conclusively established, summary judgment on subsection 13(f)(2) must be denied.

## III. WHERE WELCH HAD BEEN AND WHERE HE WAS GOING ARE MERITS ISSUES IN THE UNDERLYING SUIT, AND THAT EXTRINSIC EVIDENCE CANNOT BE CONSIDERED UNDER (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022)) .

Great American's motion depends on extrinsic evidence, because the underlying pleading says nothing about Welch's route. But the evidence it offers cannot be considered, because it reaches directly into the merits of the underlying liability dispute.

**A. The eight-corners rule governs, and doubts are resolved for the insured.** Texas determines the duty to defend by "comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven." (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022)) Courts "resolve all doubts regarding the duty to defend in favor of the duty" and construe the pleadings liberally. (Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523 (5th Cir. 2004)) A duty to defend arises whenever the pleaded facts, taken as true, potentially state a covered claim. (Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523 (5th Cir. 2004)) The Lopez/Enamorado petition pleads an auto accident and vicarious liability — claims that potentially fall within an auto policy — so the eight-corners analysis supports a defense. (Allstate Cnty. Mut. Ins. Co. v. Wootton, 494 S.W.3d 825 (Tex. App. 2016))

**B. The extrinsic-evidence exception forbids evidence that overlaps with the merits of liability.** The narrow extrinsic-evidence exception permits consideration of outside facts only where the evidence "(1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved." (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022)) Great American quotes this test but ignores how (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022)) actually applied it: the Texas Supreme Court refused to consider the proffered evidence because a dispute over *when* an event occurred

necessarily implicated *whether* it occurred, forcing the insured to confess liability facts "to invoke coverage" and thereby undermining its liability defense. (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022)) Overlapping evidence is barred because it "poses a significant risk of undermining the insured's ability to defend itself in the underlying litigation." (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022))

**C. Evidence of what Welch was doing and where he was going overlaps squarely with the underlying merits.** The underlying suit pleads that Welch acted "in the course and scope of his employment" with Intermodal and others and seeks to hold those entities vicariously liable on that basis. (ECF #30 at 17; ECF #30 at 18) Great American's evidence — that Welch was returning from a cargo delivery made "on behalf of Intermodal" to a lot where he parked "between dispatches" — is offered to prove that the truck was being used in Intermodal's business. (ECF #30 at 17) That is the same question the underlying factfinder must answer in deciding whether Welch was Intermodal's agent or employee acting in the course and scope of that relationship. A Texas court confronting nearly identical facts refused to consider such evidence: in (Allstate Cnty. Mut. Ins. Co. v. Wootton, 494 S.W.3d 825 (Tex. App. 2016)) , the insurer offered extrinsic proof that the driver was "acting in the course and scope of" employment to trigger a policy exclusion, and the court held it "may not consider the extrinsic evidence" because those facts were not pleaded and the course-and-scope question overlapped with the negligent-entrustment and vicarious-liability merits. (Allstate Cnty. Mut. Ins. Co. v. Wootton, 494 S.W.3d 825 (Tex. App. 2016); Allstate Cnty. Mut. Ins. Co. v. Wootton, 494 S.W.3d 825 (Tex. App. 2016)) The Fifth Circuit reached the same conclusion in (Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523 (5th Cir. 2004)) , barring extrinsic evidence that put the truth of the facts alleged in the underlying petition into question and "clearly overlaps

with the merits of" the underlying negligence suit. (Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523 (5th Cir. 2004)) So too here: Great American cannot establish its "business use" defense without litigating the business-relationship facts that are the heart of the underlying case.

**D. Great American concedes the overlap.** Great American declined to move on its remaining coverage counts because they "would require extrinsic evidence outside of the pleading allegations potentially overlapping with the merits of liability in the underlying lawsuit," which, "under Monroe, ... the Court cannot consider." (ECF #30 at 6) The evidence of where Welch had been and where he was going suffers from the identical defect.

**E. In any event, the evidence does not conclusively establish the coverage facts.** Even setting overlap aside, extrinsic evidence "may not be considered if there would remain a genuine issue of material fact as to the coverage fact to be proved," and doubts are resolved in the insured's favor. (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022)) For the reasons given in Part II, a single interested declaration describing multiple stops and asserting only that Welch "regularly" parked at Howton Street does not conclusively establish either the route or the "regularly garaged" fact. The evidence fails the first and third requirements of the exception alike. (Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195 (Tex. 2022))

## IV. EVEN ABSENT A DUTY TO DEFEND, THE DUTY TO INDEMNIFY IS NOT RIPE FOR ADJUDICATION.

The duty to defend and the duty to indemnify are "distinct and separate duties," and an insurer "may have a duty to defend but, eventually, no duty to indemnify." (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997)) As a general rule, the duty to indemnify "cannot be adjudicated until there has been a judgment in the underlying suit because facts

proven at trial may differ slightly from the allegations." (Sentry Select Ins. Co. v. Ruiz, 324 F. Supp. 3d 874 (W.D. Tex. 2018)) Great American invokes the narrow exception recognized in (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997)) , under which indemnity may be decided early only "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997)) That exception applied in (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997)) only because "[n]o facts can be developed in the underlying tort suit" that could transform the conduct at issue into a covered occurrence. (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997))

This case is the opposite. Coverage here "may turn on facts actually proven in the underlying lawsuit" (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997)) — in particular, the facts about Welch's activity, his relationship to Intermodal, and the circumstances of his travel that the underlying factfinder will resolve in deciding liability and course and scope. Because those facts remain to be developed, the (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997)) exception does not apply, and the Court should defer the indemnity question. A federal court confronting an analogous auto-accident coverage dispute did exactly that: having rejected the insurer's no-duty-to-defend arguments, it found the principles underlying (Farmers Texas Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81 (Tex. 1997)) inapplicable and deferred ruling on indemnity "until the Underlying Lawsuit is resolved." (Sentry Select Ins. Co. v. Ruiz, 324 F. Supp. 3d 874 (W.D. Tex. 2018)) The Court should take the same course here.

## CONCLUSION

For the foregoing reasons, Defendants Travelers Indemnity Company and D/C Intermodal, LLC respectfully request that the Court deny Great American Assurance Company's Motion for Summary Judgment on its duty to defend and duty to indemnify (Counts I and III). In the alternative, Defendants request that the Court defer ruling on the motion — and in particular on the duty to indemnify — until the material facts regarding the circumstances of the accident are resolved, and permit any further discovery warranted under Rule 56(d). (Fed. R. Civ. P. 56) Defendants further request all other relief to which they may be entitled.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD

*/s/ Donna F. Thomisee*
Donna F. Thomisee
TBN: 02705550
FBN : 8722
dthomisee@lawla.com
801 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 222-1990
Facsimile: (713) 222-1996
ATTORNEY-IN-CHARGE FOR TRAVELERS INDEMNITY COMPANY AND D/C/ INTERMODEL, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2026, I caused the Motion to be:

☒ electronically filed with the Clerk of the Court using the CM/ECF system

☒ emailed to the following counsel of record:

David J. Schubert
Stephen Burnett
SCHUBERT & EVANS, P.C.
900 Jackson, Suite 630
Dallas, Texas 75202
*Attorney for Great American Assurance Company*

Rachael S. Fountain
Lewis Brisbois Bisgaard & Smith LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
*Attorney for H.E.C. Leasing, LLC*

Alex P. Boylhart
KWOK DANIEL LTD., L.L.P.
2050 W. Sam Houston Pkwy S, Suite 1500
Houston, Texas 77042
*Attorney for Emmanual Lopez and Darlyn Enamorado*

John Engvall, Jr.
Engvall & York, LLP
1811 Bering Drive, Suite 210
Houston, Texas 77057
*Attorney for Jermar Roemaon Welch and Dominion Transports & Logistics, LLC*

*/s/ Donna F. Thomisee*
Donna F. Thomisee